# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDWIN FRANCISCO RIVERA ROSA**, *Plaintiff*, v. **CENTRO MAS SALUD DR. GUALBERTO RABELL, CORP., ET. AL.**, *Defendants*. | **Civil No.** 18-1953 (DRD) |

## OMNIBUS OPINION AND ORDER

### I. FACTUAL AND PROCEDURAL BACKGROUND

Pending before the Court is Codefendant, Medical Pharmacy & Laboratory Administrative Services' (hereinafter, "MPLA") *Motion for Summary Judgment* pursuant to Fed. R. Civ. P. 56 (C) & Legal Memorandum in support thereof (hereinafter, "Motion for Summary Judgment") (Docket No. 110).[1] Following MPLA's *Motion for Summary Judgment*, Codefendant Platinum Emergency Physicians, P.S.C. (hereinafter, "PEP") filed a *Motion for Joinder* and a SUMF regarding the aforementioned motion in support thereof. *See* Docket Nos. 123 and 123-1. Then, Plaintiff Edwin Francisco Rivera Rosa (hereinafter, "Plaintiff") filed his respective *Opposition to Codefendants' Motion for Summary Judgment* (hereinafter, "Opposition"). *See* Docket No. 148. As a result thereof, PEP filed a *Reply*. *See* Docket No. 154. Plaintiff later filed a *Surreply*. *See* Docket No. 156.

For the reasons set forth below, the Court hereby **DENIES** MPLA's *Motion for Summary Judgment* and PEP's *Motion for Joinder*.

---

[1] In support of the *Motion for Summary Judgment*, MPLA also filed a Statement of Uncontested Material Facts (hereinafter, "SUMF"). *See* Docket No. 111.

## II. RELEVANT UNCONTESTED MATERIAL FACTS[2]

As stated above, MPLA filed a SUMF in support of its *Motion for Summary Judgment*. *See* Docket No. 111. PEP also filed a SUMF in support of its *Motion for Joinder*. *See* Docket No. 123-1. As Plaintiff did not oppose the SUMF's filed by MPLA and PEP they are deemed as unopposed.[3] The Court reconciles the aforementioned SUMF's and finds that the relevant uncontested material facts are the following:

### A. *MPLA's Factual Findings*

1. The Municipality of San Juan (hereinafter, "MSJ") is the owner of the Rabell CDT. *See* Docket No. 45 at ¶ 6.

2. **MPLA is the operator or administrator of the Rabell CDT**. *See* Docket No. 45 at ¶ 7. (Emphasis ours).

3. MSJ executed a Primary Care Professional Medical Services Agreement (hereinafter, "PSC") with MPLA. *See* Docket No. 111-1.

4. Clause 10.9 of the PSC establishes that **the relationship between MSJ and MPLA is "solely that of independent contractors**, and nothing in this Agreement or otherwise shall be construed or deemed to create any other relationship, including one of employment, agency or joint venture." *Id.* at 27. (Emphasis ours).

---

[2] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56 (c) (3).

[3] The major drawback on Plaintiff's failure to answer MPLA and PEP's Statement of Uncontested Facts is that a "statement of material facts . . . shall be deemed admitted," but only "if supported by record citations" as required by Local Rule 56. Not properly answering and/or opposing a summary judgment request under Local Rule 56 (c) is "at their own peril." *See* Local Rule 56 (c) and (e); *see also* Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001).

5. The PSC was effective from October 1, 2015, through January 31, 2017, during that time Patient Ms. Graciela Rosa Concepción visited the Rabell CDT from June 2016 until her death on August 29, 2016. *Id.* at 1; *see also* Docket No. 45 at 8-9.

   *B.* ***PEP Factual Findings***

1. PEP is a **health services provider and the employer or principal contractor of the Physicians**. *See* Docket No. 45 at ¶ 8. (Emphasis ours).

2. On June 19, 2015, the MSJ and PEP executed a Professional and Consultive Service Contract (hereinafter, "PASC"). *See* Docket No. 137-1.

3. The PASC constitutes the only agreement between PEP and MSJ regarding the services pertaining to the agreement. *Id.* at 29.

4. The original PASC's term was from July 1, 2015, to September 30, 2015. *Id.* at 16.

5. According to the PASC, PEP agreed to provide medical personnel for the Emergency Rooms of, among others, the Rabell CDT. *Id.* at 2.

6. According to the PASC, **the relationship between PEP and MSJ is that of an independent contractor**. *Id.* at 26. (Emphasis ours).

7. On September 24, 2015, the MSJ and PEP amended the PSAC to extend the term from October 1, 2015, to June 30, 2016, among other matters. *See* Docket No. 137-2 at 4.

   ### III.   STANDARD OF REVIEW

   *A.* ***Motion for Summary Judgment Standard (Fed. R. Civ. P. 56)***

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." Veda-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 179 (1st Cir. 1997). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Johnson v. U. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (*citing* Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000) (*citing* Liberty Lobby, Inc., *supra*, at 247–248); Prescott, *supra*, at 40 (1st Cir. 2008) (*citing* Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (*citing* the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-

determinative fact on the record. *See* DeNovellis v. Shalala, *supra*, at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (*citing* Celotex Corp. v. Catrett, *supra*, at 323). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" which affects the granting of a summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); *see*, *also*, Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial- worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., *supra*, at 477. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) ("We afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.") (internal citations omitted); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable

inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Furthermore, the Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); Anderson v. Liberty Lobby, Inc., *supra*, at 255; *see, also*, Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves, *supra*, at 150 (*quoting* Anderson v. Liberty Lobby, Inc., *supra*, at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56 (a). Hence, in order to prevail, Codefendants must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiff, the applicable law compels a judgment in its favor.

### IV.     ANALYSIS

In the instant *Complaint*, Plaintiff requests redress for damages sustained under Article 1802 and Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-5142, and imputes negligence to Codefendants for not "attending and diagnosing adequately the medical

condition of Graciela Rosa Concepción (RIP), causing her death." Docket No. 45 at 3. In turn, MPLA argues that Plaintiff's claims "are not sustainable as a matter of law given the immunity conferred by Article 41.050 of the Puerto Rico Insurance Code." Docket No. 110 at 1. MPLA essentially asserts that the health services provided by said entity at the Rabell CDT fall within the scope of the immunity afforded by the Medical-Hospital Professional Liability Insurance Act (hereinafter, "MHPLIA") to municipal employees or independent contractors by virtue of such statutes. *Id.* at 10. In support of MPLA's request for summary judgment, Codefendant PEP argues that it also "enjoys absolute immunity from any and all medical malpractice claims in relation to any service they provided at the [Rabell] CDT." Docket No. 123 at ¶ 3.

Plaintiff concedes that immunity is extensive to healthcare professionals that work as "employees/contractors of hospitals that are owned by a Municipality." *See* Docket No. 148 at 1 (*citing* Vega Martínez v. Hosp. San Antonio, Inc., Civ. Num. 18-1055 (DRD) (D.P.R. 2019); Flores-Pérez v. Rodríguez-Del Rio, Civ. Num. 17-2214 (ADC) (D.P.R. 2020)). Notwithstanding, Plaintiff alleges that Codefendants are "judicial health providers" and regards them as "healthcare institutions" and as such, they are not covered by the immunity.[4] Moreover, Plaintiff claims that Codefendants' failed to demonstrate they are entitled to summary judgment and that their respective motions should be denied since the statute refers to only "natural persons" and that "[n]owhere in the law is immunity granted to hospitals or corporate institutions." *Id.*[5] PEP later filed a *Reply* to Plaintiff's *Opposition*. *See* Docket No. 154. PEP reaffirmed that by virtue of the PASC it was a municipality contractor that provided medical personnel for the Emergency Room

---

[4] Plaintiff also states that Codefendants are "juridic institutions or legal entities." *See* Docket No. 148 at 4.
[5] Plaintiff mentions that the term "medical provider" is not defined anywhere in the Insurance Code of Puerto Rico.

7

of the Rabell CDT. *Id.* at 2. "Therefore, any medical service or treatment that allegedly PEP provided to Ms. Graciela Rosa Concepción (RIP) was within the scope and terms of the PASC that was executed, and in force, between them and the [MSJ]." *Id.* Furthermore, PEP argues that Article 41.050 "does not exclude a legal person or entity from its application, but rather defines its application to healthcare professionals with the clarification that said professionals **include** employees and **contractors**." *Id.* at 3. PEP further alleges that since one of the Physicians is covered by immunity it "will lose any possibility to level ("nivelación") any responsibility or liability" with said physician. *Id.* at 4.[6]

Plaintiff's *Surreply* restates that Article 41.050 only provides immunity to natural persons, deemed as healthcare professionals, that provide medical services. *See* Docket No. 156. Moreover, Plaintiff construes that Codefendant "PEP wants this Court to extend the immunity of Article 41.050 to corporations or juridic persons claiming that, if and when the leveling possibility is lost, the employer of the immune employee can avail itself of the legislative immunity enjoyed by its employee." *Id.* at 2. Plaintiff contends that PEP confuses the term "leveling" with "vicarious liability" and implies that it intends to bypass the vicarious liability by masquerading it as "leveling", thus, rendering inoperative Article 1803 of the Puerto Rico Civil Code. *See* P.R. Laws Ann. tit. 31, § 5142.

### A. *Immunity pursuant to the Insurance Code of Puerto Rico*

The Codefendants' defenses are founded on immunity pursuant to the MHPLIA provided in Article 41.050 of the Insurance Code of Puerto Rico, Laws Ann. tit. 26 § 4105. MHPLIA provides

---

[6] PEP asserts that it enjoys absolute immunity by its own merits as a contractor or, in the alternative, it benefits from the Physicians' immunity because the possibility of leveling between them is lost. *Id.*

immunity from suit against any health care professional, employee or contractor, while acting within the scope of their duties. To that end, MHPLIA specifically provides that:

> **No healthcare professional (employee or contractor) may be included as a defendant in a civil action for damages because of culpability or negligence arising from professional malpractice while said healthcare professional acts in accordance with his duties and functions**, including teaching duties, **as an employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities,** the Comprehensive Cancer Center of the University of Puerto Rico, **and the municipalities**.

P.R. Laws Ann. tit. 26, § 4105 (Emphasis ours). The amendment pertinent to the controversy before the Court is Law No. 150 of December 10, 2013 (hereinafter, "Law 150-2013"). Law 150-2013 provides that the immunity granted in Article 41.050 applies retroactively to any complaint regarding events occurring on or after June 27, 2011. The Court has interpreted Article 41.050 and its respective amendments finding that the language of Law 150-2013 is clear, unambiguous, and fully enforceable, thus dismissing all claims filed against a doctor performing surgery at Hospital San Antonio. *See* Muñoz Vargas v. Rodriguez Laguer, Civil No. 1597 (CVR), 2016 WL 406345, at 2-3 (D.P.R. February 2, 2016); *see also* Kenyon v. Hospital San Antonio, Inc., Civil No. 14-1516 (SCC) 2017 WL 3610564 (D.P.R. March 30, 2017).

The MHPLIA contains three fundamental requirements for immunity to apply to the health services professionals that work for the government, its dependencies, and instrumentalities. To wit: **"1) he must be a health care professional; 2) the harm causes by his malpractice must have taken place in the practice of his profession; and 3) he must have acted in compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities, and municipalities."** Colón v. Ramírez, 913 F. Supp. 112, 119 (D.P.R. 1996), aff'd, 107 F.3d 62 (1st. Cir. 1997); *see* Hall v. Centro Cardiovascular de P.R., 899

F. Supp. 2d 106, 111 (D.P.R. 2012); *see also*; Román v. González, 127 P.R. Dec. 601 (1990). (Emphasis ours).

### i. MPLA's and PEP's Immunity Claim

The issue before the Court is whether Article 41.050's immunity is extended to legal persons, like MPLA and PEP. Codefendants aver that the immunity provided by statute is applicable to corporations and cites various cases to persuade the Court.[7] Notwithstanding, the Court notes that in the aforementioned cases all defendants protected by the immunity were physicians. Consequently, the Court finds that the immunity afforded to certain healthcare professionals does not encompass corporate entities. A careful review of Article 41.050 of the Insurance Code of Puerto Rico and various case law cited by the parties reveals that immunity is invested specifically in "health care professionals", whether they are employees or independent contractors, "while said professional acts in compliance of his duties and functions." Article 41.050 immunity endowed by the Legislature is a response to public policy considerations that surpass any act or omission of the individual that is protected by it. *See* Romero Arroyo v. Commonwealth, *supra*, at 745. However, it has been established that "**a person must meet three requirements to acquire immunity under § 4105.**" Román v. González, *supra* (1990); *see also* Colón v. Ramírez, *supra*, 119 (D.P.R. 1996) (Emphasis ours). That is: (1) the individual must be a health care professional; that (2) caused harm by his malpractice in the course of his profession, and (3) while carrying his function as an employee of the Commonwealth's municipality. *Id.* The

---

[7] *See* Colón v. Ramírez, *supra*, at 119 (D.P.R. 1996); Feliciano v. Díaz, 641 F.Supp.2d 120, 122 (2009); Lind Rodríguez v. Commonwealth, 12 P.R. Offic. Trans. 85 (1982); Romero Arroyo v. Commonwealth, 127 P.R. Dec. 724, 745 (1991); Rodríguez Ruiz v. Hosp. San Jorge, 169 P.R. Dec. 850 (2007); Román v. Gonzalez, *supra* (1990); Vázquez Negrón v. Commonwealth, 13 P.R. Offic. Trans. 192 (1982); Vázquez v. Commonwealth, 9 P.R. Offic. Trans. 26 (1979); Rodríguez Figueroa v. Centro De Salud, 197 P.R. Dec. 876 (2017).

Supreme Court of Puerto Rico has also defined the scope of the **immunity granted by the statute** stating that it **releases from liability** those **physicians** who work exclusively for the Commonwealth and those who are engaged in the private practice while complying with their duties as Commonwealth's employees. *See* Lind Rodriguez v. Commonwealth, *supra*, at 68 (Emphasis ours). It is clear that the statute in controversy "provides absolute immunity for Commonwealth-employed physicians for their tortious acts in the course of their employment." *Id.* Furthermore, the Court has held that said immunity "is not a personal defense, but rather a non-existent cause of action, which is not waived and can be asserted at any moment." *Id.* It is irrelevant if the health care professional was negligent or not, it only needs to be established that the individual was acting as a government employee at the time of the event that gave rise to the claim. *See* Colón v. Ramírez, 107 F.3d 62, 63 (1st. Cir. 1997).

Furthermore, the Court notes that the immunity granted to health professionals also extends to their insurance companies since there is no cause of action against the insured doctor, the insurer is not liable. *See* Rodríguez Diaz v. Sierra Martínez, 717 F. Supp. 27, 33 (D.P.R. 1989) (*citing* Lind Rodíguez, *supra*, at 69). However, in the case at bar, Codefendants are not insurance companies, therefore, it is appropriate to interpose a damage claim because they are not covered by the current statute immunity.

As a result, the Court is not persuaded by Codefendants' allegations and finds that MHPLIA's first requirement for immunity is not met. Namely, Codefendants cannot be considered healthcare professionals, nor can they be encompassed within the meaning of an independent contractor. A ruling on the contrary would be tantamount to impermissible judicial legislation. As the Court deems that Plaintiff is not a person within the meaning of the applicable statute,

the Court need not discuss the second and third requirements for immunity. Hence, a cause of action exists against MPLA and PEP.

### ii. *PEP's Leveling Claim*

In its *Reply*, PEP argues that because one of the Physicians is covered by immunity, should that immunity not be extended to PEP, it will lose any possibility to level ("nivelar") for any responsibility or liability to be determined by the Court. *See* Docket No. 154 at ¶ 14 (*citing* Quílez-Velar v. Ox Bodies, P.R. Offic. Trans. 1079 (2017)). Furthermore, PEP avers that "once that leveling possibility is lost, PEP can avail itself by Dr. Tartak-Salicrup's responsibility limit, immunity in this case." *Id.*

In *Quílez*, the Supreme Court found that the effect of the liability cap that protects a municipality with respect to its solidary [joint and several] debtor in a damages [tort] action is that if a joint Codefendant loses his right to level against his co-debtor due to the latter's statutory immunity or limitation of liability, **the Joint Codefendant should only be liable to the plaintiff in proportion to his liability**. *See id.*

Accordingly, the Court disagrees with PEP's contention as it finds that this allegation lacks merit as the Supreme Court has consistently "prevented a defendant from bringing an action for contribution against a statutorily immune joint tortfeasor." *Id.* "Allowing an action for contribution . . . would undermine, in practice, the immunity granted by law to the joint tortfeasor [as] it would be tantamount to ignoring the strong public policy considerations that led the lawmaker to grant immunity to a specific person." *Id.*

Contrary to PEP's assertion, the Supreme Court has "refused to make a solidary co-debtor liable for payment of the share of damages assigned to a statutorily immune co-debtor." *Id.* If a

co-debtor is immune by virtue of a statute, their share of the debt cannot be part of the solidary debt. Similarly, if a co-debtor is protected by a statutory liability cap, their portion of the debt cannot exceed that limit. *Id.*; *See, also,* P.R. Laws Ann. tit. 31, § 3112. In *Quílez*, the Supreme Court held that:

> [t]he immunities or limits of liability established by law are personal exceptions or defenses that may be raised by a debtor. Thus, a debtor may take advantage of the statutory immunity or liability limit of another co-debtor with respect to the share of the debt for which that other debtor is liable. Therefore, today we hold that **a solidary debtor may invoke the statutory liability limit that protects a co-debtor municipality with respect to the share assigned to that municipality.**

Quílez-Velar v. Ox Bodies, *supra* (Emphasis ours). This exception allows the Municipality's personal defenses to be used by the other joint debtor against the creditor's claims and the latter can avail itself only from the part of the debt for which they may be liable. Taking the aforesaid into account, in the instant case, should judgment be entered against PEP under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-5142, PEP's responsibility would be circumscribed to the extent of its own obligation.

The rule of law in *Quílez*, *supra*, is governed by the principles stated in Cortijo Walker v. P.R. Water Res. Auth., 91 P.R. Dec. 574 (1964) and Widow of Andino v. P.R. Water Res. Auth., 93 P.R.R. 168 (1966). In the context of employer immunity for work-related accidents, the Supreme Court had the opportunity to express itself on this matter and held that statutory immunity granted to an insured employer cannot be defeated through an indirect third-party claim against the employer for its alleged negligence in said death. *See* Cortijo Walker, *supra*. The Court concluded that if the immune employer is held liable, when "defendant would not be able to file an action for contribution against the employer to recover the sum paid excess by said defendant". *Quílez*, *supra*. However, the Supreme Court did not have to express itself on that

occasion of the effect it would have on the plaintiff if the defendant could not recover in a subsequent leveling action against an immune employer. It is not until *Widow of Andino*, that the Supreme Court addressed the issue and resolved that a "defendant should be held liable for the damage only in proportion to its fault and to the degree of contribution in producing the same." 93 P.R.R. 168, 180 (1966).

Therefore, pursuant to the clear language of the statute, Codefendants failed to demonstrate that they are "entitled to judgment as a matter of law". Regardless of what Codefendants stated in their respective contracts, there is a valid claim against MPLA and PEP as they are not afforded statutory immunity.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** MPLA's *Motions for Summary Judgment* and PEP's *Statement of Uncontested Material Facts in Support of Motion for Joinder* at Dockets Nos. 110 and 123.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, 16th day of July, 2021.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge